## GENERAL SESSIONS.

### NEW YORK, NOVEMBER, 1823.

The People
vs.
Bleeker et al. } Conspiracy.

Present—the Hon. *Richard Riker*, Recorder.

*Maxwell*, District Attorney, Counsel for the Prosecution.
*F. A. Blake* and *W. M. Price*, Counsel for the Defendants.

On an indictment for a conspiracy evidence may be admitted of other acts indicative of criminal collusion with other persons to show the quoanimo of the defendants in relation to the charge in the indictment.

On an indictment for a conspiracy, the examination of a prisoner implicating others cannot be read upon the trial.

Bleeker and another were indicted for conspiracy to obtain from C. certain goods by fraudulent means.

*Maxwell*, in opening the case, stated, that in addition to the acts of the defendants in the particular transaction alluded to in the indictment, he should in the course of the trial introduce evidence to show that their dealings with several other individuals had been accompanied by circumstances indicative of a criminal collusion. Such evidence was accordingly offered.

*Blake* objected to its introduction, on the ground that to inquire into *particular crimes*, other than those charged in the indictment, was repugnant to the general principles and established rules of evidence. For such offences, he observed, the defendants are liable to future indictments; and when specific charges are regularly and legally preferred, they will meet them without fear. He insisted, that the defendants could not possibly be expected to come before the court prepared to vindicate every transaction of their lives, or to explain at the moment the occurrences of remote periods. He urged, that an unjust and cruel surprise must be the necessary and inevitable con-

sequence of the course which the district attorney proposed to adopt.

*Per Cur.* The rule has been well settled in this court in the Hitchcock's case, (6 C. H. R. 43,) where the same point was taken, and in the case of Alison v. Matthieu, (3 Johns. Rep. 233,) by the supreme court of the state. The evidence is inadmissible, on the ground that it is competent in cases of conspiracy, as in those of forgery, libel, and uttering base coin or forged notes, to show by other acts the *quo animo* or *scienter* of the defendants.

*Maxwell* farther proposed to read the examination of Bleeker, taken separately and apart from the other defendant, to prove the charge laid in the indictment.

*Blake* objected on the following grounds :—If the examination now offered were read in evidence, it must of necessity operate against *both* of the defendants, or be utterly *nugatory and irrelevant.* The defendants are not now on trial for a conspiracy in which any third person can form a party; and as no man can by himself commit the crime charged in the indictment, they must be *jointly convicted or jointly acquitted.*

Can the document offered be regarded as evidence against both ? It is at most the *mere confession* of the individual under examination ; and shall this be admitted to convict another ? Surely not. (2 Hawk. Pl. Cr. 46. M'Nally's Evid. 40.)

It is true, the course proposed has in some instances been sanctioned in Great Britain, and confessions to which the accused had never assented, either expressly or by implication, have been admitted against him. This, however, was done by a court which was for ages the chosen instrument of royal vengeance. A court whose

proceedings have long been execrated and denounced even in the kingdom where it originated and flourished. A tribunal which, to use the words of Lord Clarendon, "held for honourable that which pleased, and for just that which profited." I allude to the star chamber.

I repeat it, there is no instance to be found in which the confession of one has been permitted to operate against another, except in cases where the bitter and settled animosity of the crown demanded the sacrifice of the accused, in a voice which bade defiance to the principles of truth, humanity, and justice. Such were the cases of the Earl of Essex, (1 Sta. Tr. 197,) of Sir Nicholas Throckmorton, (1 Sta. Tr. 70,) and of Sir Walter Raleigh,* (cited M'Nally's Evid. 40.) These are not such precedents as this court will treat with deference and respect, nor are they such, I trust, as the district attorney will rely on as authority. Even Great Britain, though she has not yet forgotten, in cases where the crown is a party, the lessons of oppression and violence which she learnt in days of yore, has in latter times established a principle more humane and just than the one contended for in the present instance. (Thelwell's case, M'Nally's Evid. 614.)

*Price.*—An examination in an instance of this kind stands on a different footing from one taken in a case of felony. The taking of the latter is authorized and provided for by statute ; but this is, at most, a mere naked confession, reduced to writing, without even the solemnity of a legisla-

---

* On this occasion, Sir Walter with some little acrimony, but certainly with much justice, remarked of Sir Edward Coke, then attorney general, that " Mr. attorney neither behaved like a man of quality nor a man of virtue."

tive sanction. Such a paper cannot surely be read to aid the conviction, not only of the party examined, but of another individual also.

After much discussion, the evidence was overruled.— Verdict *Not Guilty*.

---

# GENERAL SESSIONS.

## NEW-YORK, JANUARY, 1824.

*Maxwell*, District Attorney, Counsel for the Prosecution.
*Price*, Counsel for the Prisoner.